CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED *Danville*
OCT 2 2 2012
JULIA C DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| KENNETH R. EDWARDS, | ) | CASE NO. 4:12CV00005 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | By:  B. Waugh Crigler |
| Defendant. | ) |     U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's May 13,
2010 protectively-filed application for a period of disability and disability insurance benefits
under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416 and 423, is before this
court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a
report setting forth appropriate findings, conclusions, and recommendations for the disposition of
the case.  The questions presented are whether the Commissioner's final decision is supported by
substantial evidence, or whether there is good cause to remand for further proceedings.  42
U.S.C. § 405(g).  For the reasons that follow, the undersigned will RECOMMEND that an Order
enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the
Commissioner's final decision, and DISMISSING this action from the docket of the court.

In a decision dated August 18, 2011, an Administrative Law Judge ("Law Judge") found
that plaintiff had not engaged in substantial gainful activity since June 21, 2005, his alleged date
of disability onset.[1]  (R. 14.)  The Law Judge determined plaintiff's residuals of musculoskeletal

---

[1] Disability is defined as the inability to engage in any substantial gainful activity by
reason of any medically determinable physical or mental impairment or combination of
impairments that can be expected to result in death or that has lasted or can be expected to last
for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(A) (2004).  In order
to qualify for a period of disability and disability insurance benefits, plaintiff must establish that

injury and degenerative disc disease were severe impairments. (R. 14.) He also concluded that, through the date of the hearing, plaintiff did not suffer an impairment or combination of impairments which met or equaled a listed impairment. (R. 14-15.) Further, the Law Judge found that, from June 21, 2005 through July 9, 2010, plaintiff possessed the residual functional capacity ("RFC") to perform a range of sedentary work, with the limitations that due to chronic moderate or greater pain, he was incapable of maintaining attention, concentration, and task persistence in order to perform even simple, repetitive tasks on a sustained and continuing basis.[2] (R. 15-17.) The Law Judge also found that, beginning on July 10, 2010, plaintiff possessed the RFC to perform the full range of sedentary work. (R. 17-19.)

The Law Judge relied on portions of the testimony of Sandra M. Wells-Brown, Ed.D., a vocational expert ("VE"), which was in response to questions premised on the Law Judge's RFC finding. (R. 18-19, 51-54.) Based on this testimony, the Law Judge determined that plaintiff was incapable of performing his past relevant work.[3] (R. 18.) The Law Judge determined that from June 21, 2005 through July 9, 2010, there were no jobs that existed in significant numbers in the national economy that plaintiff could have performed. (R. 18.) However, relying on the Medical-Vocational Guidelines, the Law Judge found that, beginning on July 10, 2010, there were jobs that plaintiff could perform. (R. 18-19.) Accordingly, the Law Judge found that plaintiff was disabled from June 21, 2005 through July 9, 2010, but not thereafter. (R. 19.)

---

he became disabled prior to the expiration of his insured status, which is December 31, 2010. *See* 20 C.F.R. § 404.131(a); (R. 14, 171, 203.)

[2] Sedentary work is defined in 20 C.F.R. § 404.1567(a) and 20 C.F.R. § 416.967(a) as involving lifting no more than 10 pounds occasionally and less than 10 pounds frequently, standing or walking 2 hours in an 8-hour workday, and sitting about 6 hours in an 8-hour workday.

[3] While the Law Judge did question the VE about the exertional levels of plaintiff's past work, he did not question the VE about what work plaintiff could perform at his past or current RFC. (R. 51-54.) Instead, the Law Judge relied on the Medical-Vocational Guidelines ("Grids") in making his RFC, and ultimate disability, findings, specifically Rule 201.28 . (R. 18-19.)

2

Plaintiff appealed the Law Judge's August 18, 2011 decision to the Appeals Council. (R. 1-6.) In its November 30, 2011 decision, the Appeals Council found no basis to review the Law Judge's decision. (R. 1-2.) The Appeals Council denied review and adopted the Law Judge's decision as the final decision of the Commissioner. *Id.* This action ensued and briefs were filed, and oral argument was held by telephone before the undersigned on September 27, 2012.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence, which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance." *Id.* at 642. When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Law Judge's decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

Plaintiff argues that the Law Judge did not apply the proper legal standard in reaching his decision, and that the decision is not supported by substantial evidence. Plaintiff points out that when a claimant has been found disabled for a closed period of time, the Law Judge then is

3

required to follow an eight-step sequential evaluation[4] rather than the standard five-step sequential evaluation in determining whether the claimant has improved to the point of being able to perform substantial gainful activity.[5] (Dkt. No. 15, at 5-6.) Plaintiff argues that the Law Judge did not follow the eight-step sequential evaluation in his decision and, thereby, failed to focus on whether there was evidence of medical improvement after July 9, 2010 and, if so, whether it changed plaintiff's RFC. (Dkt. No. 15, at 6-7.) Plaintiff also contends that the Law Judge's decision on plaintiff's status after July 9, 2010 is not supported by substantial evidence. (Dkt. No. 15, at 7-9.) Finally, plaintiff argues that the Law Judge erred by failing to solicit medical evidence on the question of medical improvement and by failing to examine the VE relating to the period following July 9, 2010. (Dkt. No. 15, at 9-10.) The undersigned will address each challenge below.

Generally, the eight-step sequential evaluation is used to determine whether an individual who has been determined to be disabled remains disabled. The Commissioner must consider: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers an impairment that meets or equals the requirements of a listed impairment; (3) whether there has been a medical improvement[6]; (4) whether the medical improvement relates to the claimant's ability to work; (5) if there is no medical improvement, whether an exception may apply showing that the claimant can work; (6) whether all of claimant's current impairments in combination are severe under controlling regulations; (7) whether the claimant can return to his/her past relevant

---

[4] *See* 20 C.F.R. § 404.1594(f)(1)-(8) (2012).
[5] *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2012).

[6] Medical improvement is any decrease in the medical severity of a claimant's impairments which was present at the time of the most recent finding of disability or continued disability. A determination that there has been a decrease in medical severity must be based on positive changes in the symptoms, signs and/or laboratory findings associated with claimant's impairments. 20 C.F.R. § 404.1594(b)(1) (2012); *see also* 20 C.F.R. § 404.1528 (2006).

4

work; and (8) if the claimant cannot return to his past relevant work, whether he or she can perform other work in the national economy. 20 C.F.R. § 404.1594(f)(1)-(8) (2012). The burden is on the Commissioner to prove that a medical improvement has occurred, and that it relates to the claimant's ability to work. *Lively v. Bowen,* 858 F.2d 177, 181 fn. 2 (4th Cir.1988); *Veino v. Barnhart,* 312 F.3d 578, 587 (2d Cir. 2002). Though originally applied to cases involving review of continuing disability, the eight-step medical improvement test is now routinely used in claims related to a closed period of disability. *Leonard v. Astrue,* 2012 WL 4404508, *4-5 (W.D.Va. Sept. 25, 2012); *Stratton v. Apfel,* 2000 WL 1203903, * 7 (W.D.Va. Aug. 17, 2000); *Veino v. Barnhart,* 312 F.3d 578, 587 (2d Cir. 2002); *Burress v. Apfel,* 141 F.3d 875 (8th Cir. 1998); *Shepherd v. Apfel,* 184 F.3d 1196, 1199-1200 (10th Cir. 1999); *Pickett v. Bowen,* 833 F.2d 288, 292-293 fn. 4 (11th Cir. 1987); *Jones v. Shalala,* 10 F.3d 522, 523-24 (7th Cir. 1993); *Chrupcala v. Heckler,* 829 F.2d 1269, 1274 (3d Cir. 1987).

Facially, the Law Judge employed only the five-step sequential evaluation to determine whether plaintiff's disability continued after July 9, 2010. (R. 12-14.) The determination to place the burden on plaintiff to show his disabling impairments had not improved was erroneous. However, the Law Judge, in fact, actually considered whether there had been a medical improvement, and whether such improvement had an effect on plaintiff's ability to work when he compared plaintiff's medical records and functional abilities from before and after July 2010. (R. 15-18.) He found that, "by July 10, 2010, his condition was more effectively stabilized such that he would be capable of work activity at the sedentary level." (R. 17.) The Law Judge pointed out that, despite plaintiff's ongoing complaints of pain, his doctors had reported that his symptoms had been under better control since 2009, had ordered no further evaluation of his condition, and never suggested more aggressive pain management or further surgical

5

intervention. (R. 17.) Furthermore, the Law Judge relied on the improvement he saw in plaintiff's day to day functioning. (R. 17.) Finally, the Law Judge pointed out that the evidence of record was very limited, and that plaintiff had not submitted additional evidence supporting differing conclusions in the case. (R. 17-18.) Then, by applying the Grids, the Law Judge concluded that, under Rule 201.28, plaintiff was not disabled since July 10, 2010. (R. 18-19.)

As the Law Judge found, the medical record is very limited. It is clear that plaintiff has suffered from chronic neck and back pain since a severe car accident on June 21, 2005. (R. 33-38, 154-156.) Plaintiff testified that he was bedridden for six months and underwent surgery on his neck and back in 2005 and 2006. (R. 37.) He also testified that he used a cane thereafter to walk and still uses one from time to time. (R. 37-38.) As a result of the accident, plaintiff was awarded the full panoply of Virginia Workers' Compensation benefits on May 1, 2009. (R. 154-156.)

However, there is evidence, from as early as 2007, that plaintiff's pain was well controlled. On September 25, 2007, a treatment note from Patrick County Family Practice disclosed, "The patient says without pain medications (his pain) is a seven out of ten but more or less dissipates when the medications are taken." (R. 278.) Another note from February 26, 2008 reported that plaintiff continued to have pain but was able to do light activity as long as he did not overexert himself. (R. 277.) On June 18, 2008, the provider recorded that plaintiff's pain was "under satisfactory control with current medications," without adverse effect. (R. 276.) A report from September 16, 2008 also noted that plaintiff's pain was under satisfactory control, though indicating "the pain has not really gotten better." (R. 275.) On December 9, 2008, the provider reported that plaintiff still suffered chronic neck and back pain and a positive straight leg test. (R. 273.) A report from March 3, 2009 noted that plaintiff "continues to have back pain

Case 4:12-cv-00005-JLK-BWC Document 22 Filed 10/22/12 Page 6 of 11 Pageid#: 387

but controlled with current medication." (R. 272.) Another report from May 14, 2009 indicated that plaintiff "generally feels well" and did not reference plaintiff's neck and back pain. (R. 271.) On June 8, 2009, plaintiff's provider once again found that plaintiff's pain was under control, though noting stiffness in his neck. (R. 270.) As before, no changes were made in plaintiff's pain medication, and, after this point, plaintiff was instructed to return for a checkup only every six months. (R. 270.) Treatment records from December 18, 2009 and May 10, 2010 both indicate that plaintiff's pain was stable on current medications. (R. 292-293.)

There are only two treatment records after July 10, 2010. One, dated November 2, 2010, revealed that plaintiff "generally feels well" and noted that his back pain was controlled with Lorcet. (R. 294.) Finally, a April 28, 2011 report from Richard Cole, M.D., of Patrick County Family Practice noted that plaintiff experienced frequent pain in his back and neck and avoided work, chores, recreation, exercise, and sexual activity in the last month because his pain. (R. 295.) However, plaintiff was found to be in no distress and rated his current pain at 4 out of 10, with an average of 5 out of 10 and a high of 10 out of 10 over the prior week. (Dkt. No. 15-1.)[7] Dr. Cole made no changes in plaintiff's prescription for pain medication and instructed plaintiff to return in 6 months. *Id.*

As said, no one can doubt from the evidence in the record that plaintiff continues to suffer pain as a result of his musculoskeletal injuries. However, it is accepted that "if a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986). Ultimately, the Law Judge's finding that plaintiff's condition medically improved in a vocationally relevant manner as late as July 10, 2010 is

---

[7] Plaintiff's counsel indicated, without objection from defendant's counsel, that this page of Dr. Cole's report had been inadvertently omitted from the exhibit and was part of the record. (Dkt. No. 15, at 8.)

supported by substantial evidence.[8] The checkup records from 2009 through 2010 show that

plaintiff's pain was stable and controlled, with plaintiff alert and in no distress. (R. 268-272, 292-

294.) The April 28, 2011 examination by Dr. Cole did show that plaintiff remained in pain and

self-reported that he avoided daily activities as a result of his pain, but Dr. Cole also indicated

that plaintiff was not in distress, his pain was moderate, and Dr. Cole made no changes in

treatment. (R. 295, Dkt. No. 15-1.) Additionally, the report was of an examination that took

place four months after plaintiff's date last insured ("DLI") and took into account chest pain

which, according to the report, began after plaintiff's DLI. (R. 295.) Furthermore, plaintiff

testified that he was taking less pain medication than was prescribed, for fear of becoming

addicted. (R. 38-39, 46.) Accordingly, the Law Judge's RFC findings are supported by

substantial evidence.[9]

Plaintiff also asserts that the Law Judge erred in failing to elicit additional consultative

medical evidence, specifically on the subject of medical improvement. (Dkt. No. 15, at 9-10;

citing *Manning v. Bowen*, 717 F.Supp. 429 (W.D. Va. 1989).) Plaintiff contends that the Law

Judge should have ordered a consultative medical examination to aid in determining plaintiff's

current level of functioning in the absence of evidence from his treating physician reports. *Id.* at

_____

[8] It is not clear to the undersigned how the Law Judge arrived at July 10th as the date at
which plaintiff was no longer disabled. There are records from June 2010, including plaintiff's
Function Report and Pain Questionnaire and a state agency opinion. (R. 190-193, 195-201, 203-
211.) There are also treatment reports from May and November of 2010. (R. 293-294.) As the
undersigned finds, there is support for finding that plaintiff was not disabled throughout this
period, and it appears likely that the Law Judge was giving plaintiff the benefit of the doubt in
concluding that he had medically improved by July 10th.

[9] Plaintiff states that the Law Judge found that plaintiff's diabetes mellitus was not a
severe impairment in spite of the findings of the State Agency in its Reconsideration
Determination. (Dkt. No. 15, at 7.) However, both the Initial and the Reconsideration
Determination found that plaintiff's diabetes mellitus was not severe. (R. 206, 222.) Moreover,
plaintiff's diabetes was found to be stable and under control from 2009 onward. (R. 268-272.)
Plaintiff worsened briefly in November of 2010, but he improved by April 2011, and his diabetes
was once again found to be uncomplicated and controlled. (R. 294-295; Dkt. No. 15-1.)

8

10. Under the regulations, a Law Judge has discretion in deciding whether to order a consultative examination. *See* 20 C.F.R. §§ 404.1519a (2012). Even so, a consultative examination is likely required when the evidence as a whole is insufficient to support a decision. *Id.*; *See also Bradbury v. Astrue*, 2011 WL 6296728, *5 (W.D.Va. December 15, 2011) (quoting *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir.1989)). One also may prove necessary where there is an indication of a change in a claimant's condition that is likely to affect his or her ability to work, but the current severity of the impairment is not established. 20 C.F.R. § 404.1519a(b)(4) (2012). Here, the Law Judge did not err by failing to order a consultative examination. While the medical record is sparse, there is evidence of plaintiff's condition both before and after July 10, 2010, including a full examination from plaintiff's treating physician on April 28, 2011. (R. 295; Dkt. No. 15-1.) Accordingly, while the undersigned might have believed it helpful to secure a consultative opinion, the Law Judge properly exercised his discretion in not ordering a consultative examination.

Plaintiff also asserts that the Law Judge's examination of the VE was inadequate. (Dkt. No. 15, at 9-10.) He contends, and it is true, that the Law Judge simply did not address questions to the VE concerning the period after July 10, 2010. (Dkt. No. 15, at 9-10.) Instead, he relied on the Grids, rather than on any of the VE's testimony, to conclude that jobs were available to plaintiff after that date. (R. 18-19.) Generally, pain produces non-exertional limitations, unless it manifests itself solely upon exertion. *See Aistrop v. Barnhart*, 36 Fed.Appx 145, 146-147 (4th Cir. June 10, 2002). If a claimant suffers from an impairment which produces non-exertional limitations which prevent him or her from performing a full range of work at a given exertional level, the Commissioner may not rely solely on the Grids to satisfy his sequential burden at the final stage of the evaluation. *Id.*; *Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989).

9

Here, plaintiff testified that his pain was constant and chronic, rather than just on exertion. (R. 38.) Plaintiff's treatment providers have also described his pain as chronic and frequent. (R. 273-274, 295.) Furthermore, while a VE was present, the Law Judge posed no questions to her about whether there were a significant number of jobs in the national economy which a person with plaintiff's limitations could perform. (R. 51-54.)

Plaintiff's contention here has considerable appeal on its face to the undersigned. However, if the Law Judge's decision concerning plaintiff RFC after July 9, 201 that plaintiff possessed the ability to perform the full range of unskilled sedentary work and suffered from no additional limitations which would have a more than minimal occupational effect is supported by substantial evidence, as the undersigned has found, then plaintiff's contention here fails as a result of the finding. (R. 19.) As mentioned, there is substantial evidence to support the conclusion that plaintiff's pain is controlled which, in turn, undermines the argument that he has additional limitations, specifically non-exertional limitations, which would restrict the available range of sedentary labor. Accordingly, the Law Judge could rely on the Grids to determine whether plaintiff was disabled.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, DENYING plaintiff's motion for summary judgment and motion to remand, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become

Case 4:12-cv-00005-JLK-BWC   Document 22   Filed 10/22/12   Page 10 of 11   Pageid#: 391

conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. §

636(b)(1)(C) as to factual recitations or findings as well as to the conclusions reached by the

undersigned may be construed by any reviewing court as a waiver of such objection.  The Clerk

is directed to transmit a certified copy of this Report and Recommendation to all counsel of

record.

ENTERED: _____
U.S. Magistrate Judge

_10-22-2012_____
Date